# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

F I L E D

MAR 1 0 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Piper Ann Rountree,　　　　　　　　)
　　　　Petitioner,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　1:10cv203 (LO/TRJ)
　　　　　　　　　　　　　　　　　　)
Gene Johnson,　　　　　　　　　　　)
　　　　Respondent.　　　　　　　　　)

### MEMORANDUM OPINION

Piper Ann Rountree, a Virginia inmate proceeding pro se,[1] has filed a petition for a writ

of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of her convictions of

first degree murder and use of a firearm during the commission of a felony in the Circuit Court

for Henrico County, Virginia. Respondent filed a Motion to Dismiss and Rule 5 Answer, with a

supporting brief and numerous exhibits. Rountree was given the opportunity to file responsive

materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and she filed a reply

on October 1, 2010. For the reasons that follow, Rountree's claims must be dismissed.

### I. Background

#### A. Factual Background

In the pre-dawn hours of Saturday, October 30, 2004, Frederic Mark Jablin was shot and

killed in his driveway. See Va. Ct. of App., July 24, 2007, at 2, ECF No. 22-3. Jablin's next

door neighbor Robert McArdle heard three gun shots and saw someone running, so he called

911. See Cir. Ct. Order, June 10, 2009, at 8, ECF No. 22-16 (citing Tr., Feb. 22, 2005, at 134).

McArdle found Jablin lying next to his SUV in his driveway. See id. at 9 (citing Tr., Feb 22,

2005, at 137). A bullet was recovered from next to a tree, and another bullet was recovered from

---

[1] Notably, the petitioner is an attorney. See Pet. 11, ECF No. 2; Response 8, ECF No. 21.

Jablin's body. See See Cir. Ct. Order, June 10, 2009, at 9, ECF No. 22-16 (citing Tr. Feb. 22, 2005, at 192).

Investigators from the Henrico County Police Department considered petitioner Piper Rountree—Jablin's former wife—to be a suspect. See Va. Ct. of App., July 24, 2007, at 2, ECF No. 22-3. Jablin and Rountree had married in 1983 and divorced in 2002, and Jablin had been awarded both legal and physical custody of their three children. See Cir. Ct. Order, June 10, 2009, at 9-10, ECF No. 22-16 (citing Tr., Feb. 22, 2005, at 260-61). Rountree had moved from Virginia to Texas. See id. at 10 (citing Tr., Feb. 22, 2005, at 1294).

Investigators showed a color photograph of Piper Rountree to the people they questioned in Houston, Texas, a different color photograph of Piper Rountree to people they questioned in Williamsburg and Norfolk, Virginia, and a black and white copy of the second photograph to people they questioned in the area around Richmond, Virginia. See Va. Ct. of App., July 24, 2007, at 2, ECF No. 22-3. They also discovered that Sprint phone company records indicated that a cell phone owned by Piper Rountree had been used in the Richmond, Virginia area around the time of Jablin's death. See Pet. 22, ECF No. 2. The same cell phone communicated with cell towers in Baltimore, Maryland and then Norfolk, Virginia on October 28, 2004, see Brief in Support 27, ECF No. 2 (citing Tr., Feb. 23, 2005, at 372-373), communicated exclusively with cell towers in the Richmond area on October 29, 2004, see id. at 28 (citing Tr., Feb. 23, 2005, at 447-48), and then communicated to cell towers in western Henrico County and the City of Richmond on October 30, 2004 for calls completed at 4:30 AM and 7:19 AM. See Brief in Support 28, ECF No. 2 (citing Tr., Feb. 23, 2005, at 376). Rountree used the same cell phone to

return Investigator Colby Kelly's phone call on October 30, 2004. See Brief in Support 29, ECF No. 2 (citing Tr., Feb. 23, 2005, at 1397-98).

On November 1, 2004, Detective Allan Holsinger showed the photograph of Piper Rountree to Tina Landrum, an employee at the Miller Mart convenience store in Williamsburg, Virginia where Jerry Walters' Wells Fargo debit card had been used on October 30, 2004. See Va. Ct. of App. Op., at 4, ECF No. 22-2. Ms. Landrum recognized the woman as someone who had entered Miller Mart in the early morning hours of October 30 to use its ATM machine. See Va. Ct. of App. Op., at 3-4, ECF No. 22-2. Her eyes had been bloodshot, she smelled of alcohol, and she had asked if there was a limit to how much money one could withdraw from the machine. Id. at 4. Ms. Landrum remembered the interaction because she usually only saw regular customers at the Miller Mart during such early hours. Id.

On November 3, 2004, Investigator Colby Kelly interviewed Southwest Airlines ticket agent Kathleen Molley, who worked at the Hobby Airport in Houston, Texas. See Va. Ct. of App. Op., Aug. 16, 2006, at 2, ECF No. 22-2. Molley told Kelly that on October 28, 2004, she sold a ticket to Norfolk to a woman who called herself Tina Rountree and who was transporting a firearm that she needed to declare. Id. When shown a photograph of Piper Rountree, Molley identified her as the same woman who purchased the ticket. Id. Kelly also interviewed Alan Benestante, a screener at the Hobby Airport. Id. Benestante remembered processing a firearm being transported by a female on October 28, 2004, which was unusual because he seldom processed firearms for female passengers. Id. at 2-3. Benestante said that a photo of Piper Rountree "looked like the passenger in question," but that he could not be "a hundred percent sure." Id. at 3. However, when Benestante saw Piper Rountree on a news broadcast a few days

3

later, he called Kelly to let him know that she was the same woman he had processed in Hobby Airport on October 28. Id.

On November 4, 2004, Investigator Dorton spoke to Tarra Watford, an employee of Eagle Auto Sales near Norfolk Airport. See Va. Ct. of App. Op., at 4, ECF No. 22-2. Ms. Watford explained that she rented a 1998 Ford Windstar minivan to a white woman who was about thirty-four years old on October 28, 2004, and that she remembered the encounter because Caucasian customers were rare and because the woman was wearing a blond wig. Id. When Dorton showed Watford a photograph of Piper Rountree, Watford stated that she was "pretty sure" that was the same woman who had rented the minivan. Id. Investigator Dorton also spoke to the owner of Eagle Auto Sales, Ray Seward, who said that a female named "Mrs. Rountree" returned a minivan around 9:00 AM on October 30, 2004 and was then trying to get to Norfolk Airport. Id. Dorton showed Seward a photograph of Piper Rountree, and Seward said it was the same woman. Id.

Detective Hannah showed Piper Rountree's photograph to Tamiko James on November 4, 2004. Id. at 5. James recognized the woman who checked in on October 28, 2004 under the name "Tina Rountree," but then asked to change the name to "Jerrilyn Smith." See Va. Ct. of App. Op., at 5, ECF No. 22-2. The woman stayed in room 171 for the night of October 28, checked out on October 29, and then checked into room 304 later on October 29. Id.

On November 9, 2004, Investigator Kelly showed a picture of Piper Rountree to Boyd Adams, an employee at the "59 Gun Range" in Houston. See id. at 3. Adams told Kelly that he had seen the woman on October 26, 2004, when she and a man had purchased ammunition and used the shooting range. Id. Adams explained that females do not use the shooting range very

often, so the interaction stood out in his memory. Id. Adams also remembered that the female had said that she had the wrong identification, so they had used the man's identification. Id.

Investigators retraced Rountree's activities from October 21, 2004 until October 30, 2004. See Va. Ct. of App., July 24, 2007, at 2, ECF No. 22-3. They discovered that she had purchased one blonde wig and one red wig from an online merchant on October 21, 2004, using a Wells Fargo debit card for an account opened at Rountree's request by her ex-boyfriend Jerry Walters. See Va. Ct. of App., July 24, 2007, at 3, ECF No. 22-3; Brief in Support 24, ECF No. 2 (citing Tr., Feb. 23, 2005, at 478-80, 1331). A check, which had Piper Rountree's cell phone number written on its face and which was for the same Wells Fargo account, was used to purchase a gun cable lock from a sporting goods store in Texas on October 28, 2004. See Cir. Ct. Order, June 10, 2009, at 12, ECF No. 22-16 (citing Tr., Feb. 24, 2005, at 601-02). The same Wells Fargo debit card was used to purchase a round trip Southwest Airlines ticket from Houston to Norfolk with a layover in Baltimore. See id. at 12; see also Brief in Support 24, ECF No. 2 (citing Tr., Feb. 22, 2005, at 219; Tr., Feb. 24, 2005, at 549). The police also learned that records for a garage at Houston Hobby Airport showed that a Jeep owned by Piper Rountree entered the garage on October 28, 2004 and left on October 30, 2004. See Cir. Ct. Order, June 10, 2009, at 15, ECF No. 22-16 (citing Tr., Feb. 25, 2005, at 1014). On the night of October 28, the same debit card was used to purchase gas from a Shell station in Norfolk, Virginia. See Cir. Ct. Order, June 10, 2009, at 12, ECF No. 22-16; see also Brief in Support 25, ECF No. 2 (citing Tr., Feb. 22, 2005, at 219; Tr., Feb. 24, 2005, at 551). The card was also used to withdraw cash from an ATM in Richmond, Virginia on October 29, 2004, see Brief in Support 25, ECF No. 2 (citing Tr., Feb. 24, 2005, at 554), and to withdraw cash from an ATM inside a convenience

store in Williamsburg, Virginia on October 30, 2004—the day of Jablin's death—at 8:15 AM. See id. (citing Tr., Feb. 23, 2005, at 349; Tr., Feb. 24, 2005, at 807). Piper Rountree told Jerry Walters that the Wells Fargo debit card had been stolen the Tuesday before Jablin's death, but she suggested that he not report the card as stolen. See Cir. Ct. Order, June 10, 2009, at 13, ECF No. 22-16 (citing Tr., Feb. 24, 2005, at 489).

The investigation also revealed that Rountree had visited a neighborhood bar on the Wednesday after Jablin's murder, where she asked the bartender and a customer (Daniel O'Keefe) to sign a statement that Rountree was at the bar on Friday, October 29, 2004 and have it notarized on the spot. See Brief in Support 29-30, ECF No. 2 (citing Tr., Feb. 25, 2005, at 1109, 1113). The bartender did not remember seeing Rountree at the bar on October 29. See Brief in Support 30, ECF No. 2 (citing Tr., Feb. 25, 2005, at 1108-09). O'Keefe initially thought he had seen Rountree on October 29, but ultimately determined that he had seen her on the night of October 30. See Brief in Support 30, ECF No. 2 (citing Tr., Feb. 25, 2005, at 1113).

Finally, the investigation revealed that Rountree had asked her sister Tina Rountree's boyfriend Mike McClennanhan not to say anything about a trip they had taken to a gun range on October 26, 2004 and explained that "it'll just complicate things." See Cir. Ct. Order, June 10, 2009, at 16, ECF No. 22-16 (citing Tr., Feb. 25, 2005, at 895). After that visit to the gun range on October 26, Rountree had asked McClennanhan for "a bill with Tina [Rountree's] name and address on it." See id. (citing Tr., Feb. 25, 2005, at 888). McClennanhan let Piper Rountree take a cable bill. See id.

B. Procedural History

Rountree's attorney filed a motion to suppress the out-of-court and in-court identification testimony of Kathleen Molley (Southwest Airlines ticket agent), Alan Benestante (screener at Hobby Airport in Houston, Texas), Boyd Adams (employee of the 59 Gun Range), Tina Landrum (employee of Miller Mar convenience store in Williamsburg, Virginia), Tarra Watford (employee at Eagle Auto Sales near Norfolk Airport), Ray Seward (owner of Eagle Auto Sales), and Tamiko James (employee of Homestead Guest Suites Hotel in Richmond, Virginia). At the suppression hearing held on January 25, 2008, Rountree's attorney argued that the out-of-court identifications were overly suggestive because each witness was only shown one photograph of Piper Rountree, and the in-court identifications were inadmissible because they were not independent of the out-of-court identifications. See Va. Ct. App. Op., Aug. 16, 2006, at 1, ECF No. 22-2. The motion was denied, and this decision was upheld on appeal. See id. at 5-7.

Martin McVey, an attorney with an office near the women's clinic run by petitioner's sister Tina Rountree in Houston, testified as a witness for the defense. See Tr., Feb. 25, 2005, at 1188. He stated that Piper Rountree visited his office on October 30, 2004 at approximately 4:30 PM, and said that he shared that information with police, several reporters, and the attorneys in the case. See id. at 1193, 1197. Piper Rountree testified that the wigs she had purchased online were intended for use at a Halloween party. See Va. Ct. of App., July 24, 2007, at 3, ECF No. 22-3. She explained that she had "rented some guns to go do target practice" at the 59 Gun Range on October 26, 2004. See Va. Ct. of App., July 24, 2007, at 4, ECF No. 22-3.

After the defense rested its case-in-chief, the Commonwealth's attorney asked to call news reporter Paige Akin as a rebuttal witness to impeach McVey's testimony. See Tr., Feb. 25,

2005, at 1375. Akin had approached the Commonwealth's attorney after McVey had testified to share that she had interviewed McVey while doing background research, at which time he stated that he saw Piper Rountree on October 31, 2004 and hadn't seen her for a year prior to that date. See id. at 1376. After acknowledging that Akin had been present in the courtroom despite a rule excluding witnesses, the court overruled an objection by the defense and allowed the Commonwealth to call Akin as a rebuttal witness for the limited purpose of explaining what McVey had told her. See id. at 1377-80.

On February 26, 2005, a jury convicted Piper Ann Rountree of first degree murder and use of a firearm during the commission of a felony. Commonwealth v. Rountree, Case Nos. CR04-5364-00, CR04-5365-00. The court sentenced her to life imprisonment for the first degree murder conviction and three years for the use of a firearm conviction on May 6, 2005. Rountree pursued a direct appeal to the Court of Appeals of Virginia, arguing that the trial court erred by (1) admitting out-of-court and in-court identification testimony of seven witnesses, (2) refusing three proffered jury instructions, and (3) allowing a newspaper reporter to testify as a rebuttal witness for the Commonwealth. The Court of Appeals denied the appeal on August 16, 2006, Rountree v. Commonwealth, R. No. 0155-06-2 (Va. Ct. App. Aug. 16, 2006). A three-judge panel of the Court of Appeals granted review of the sole issue of whether it was trial court error not to suppress identification evidence because the police had shown the witnesses only one photograph of Piper Rountree. After briefing and oral argument, the Court of Appeals affirmed Rountree's convictions in an unpublished opinion dated July 24, 2007, Rountree v. Commonwealth, R. No. 0155-06-2 (Va. Ct. App. July 24, 2007). The Court of Appeals denied the petition for rehearing en banc on September 11, 2007. The Supreme Court of Virginia

refused Rountree's petition for appeal on February 28, 2008, <u>Rountree v. Commonwealth</u>, R. No. 072087 (Va. Feb. 28, 2008). On October 6, 2008, the Supreme Court of the United States refused Rountree's petition for writ of certiorari. <u>Rountree v. Virginia</u>, 129 S. Ct. 114 (2008).

Rountree then pursued a habeas corpus in the Circuit Court for Henrico County, raising the following claims:

(a)  The Court of Appeals of Virginia failed to properly apply <u>Neil v. Biggers</u>.

(b)  The trial court and the Court of Appeals erred in ruling that the out-of-court identification was not so unreliable that there was a substantial likelihood of misidentification.

(c)  The Court of Appeals erred in relying on <u>Satcher v. Commonwealth</u>.

(d)  The trial court and appellate courts erred in failing to instruct the jury on second degree murder.

(e)  The trial court erred in failing to instruct the jury on the presumption of second degree murder.

(f)  The trial court and appellate court erred in refusing a jury instruction on the fact that the failure of the evidence to reveal some other criminal agent could not be used against the defendant.

(g)  The trial and appellate courts erred in determining the trial court did not abuse its discretion in permitting the Commonwealth to use the testimony of a newspaper reporter.

(h)  Prosecutorial misconduct caused allegations to be leaked to the media so that the petitioner had no chance for a fair trial.

(i)  Petitioner was denied the effective assistance of counsel when counsel failed to object to the media representative testifying, thereby giving credibility to inflammatory articles.

(j)  Petitioner was denied the effective assistance of counsel when counsel did not raise the point that the burden of proof was being shifted to the petitioner during trial. Specifically,

9

counsel did not object during *voir dire* when the judge instructed the jury to "allow the defendant to prove her innocence."

(k) Petitioner was denied the effective assistance of counsel when counsel did not argue the evidence was insufficient to prove her convictions.

(l) Petitioner was denied the effective assistance of counsel when both charges were tried together and counsel did not object.

(m) Petitioner was denied the effective assistance of counsel when counsel failed to request a jury instruction which delineated the elements of each offense and told the jury that each element must be proved beyond a reasonable doubt.

(n) Petitioner was denied the effective assistance of counsel when counsel failed to ask for a jury instruction to the effect that they may not conclude from a dead body and a bullet wound that a crime was committed.

(o) Petitioner was denied the effective assistance of counsel when counsel failed to object to the jury instruction which told the jury that they were to presume that the petitioner was the individual at the crime scene.

(p) Petitioner was denied the effective assistance of counsel when he filed a no alibi statement without petitioner's knowledge or consent, destroying her credibility.

(q) Petitioner was denied the effective assistance of counsel when counsel did not tell the jury she was an ordained minister, a respected member of the local bar, that she helped resolve disputes in a peaceful manner, and had worked as a prosecutor in DUI cases.

(r) Petitioner was denied the effective assistance of counsel when counsel did not argue that petitioner never wanted sole custody of her children.

(s) Petitioner was denied the effective assistance of counsel when counsel argued, during the guilt phase, to show the petitioner "mercy."

(t)   Petitioner was denied the effective assistance of counsel when she testified and counsel left unanswered questions brought up by the prosecutor.

(u)   Petitioner was denied the effective assistance of counsel when he failed to object to the admission of a life insurance policy.

(v)   Petitioner was denied the effective assistance of counsel when he failed to admit testamentary documents that proved the victim's brother would inherit the victim's estate.

(w)   Petitioner was denied the effective assistance of counsel when he failed to establish that the petitioner was current on her child support.

(x)   Petitioner was denied the effective assistance of counsel when counsel failed to obtain <u>Brady</u> material from the prosecutor about the petitioner's financial records.

(y)   The prosecutor failed to disclose evidence from a key police officer witness that the prints and DNA found in the van were thought to be those of the actual perpetrator (and were not the petitioner's).

(z)   Petitioner was denied the effective assistance of counsel when counsel did not object to the prosecutor revealing the identity of the man and woman whose DNA was discovered in the van.

(aa)   The prosecutor failed to disclose the fact that they considered Joan King and McClennanhan as the actual defendants in the case.

(bb)   Petitioner was denied the effective assistance of counsel when counsel failed to subpoena a crucial witness, a CVS clerk, to testify at trial.

(cc)   Petitioner was denied the effective assistance of counsel when the prosecutor misled the jury by implying that the petitioner and her witness lied.

(dd)   Petitioner was denied the effective assistance of counsel when the prosecutor was allowed to convince the jury that since the petitioner owned a waist-length red wig, she must

have owned a shoulder-length blonde or brown haired wig, and counsel did not object.

(ee) Petitioner was denied the effective assistance of counsel when counsel did not appeal the denial of a change in venue request by trial counsel. The jury pool was so tainted, a jury could not be seated after three panels.

(ff) Petitioner was denied the effective assistance of counsel when the trial judge failed to allow counsel to *voir dire* the jurors who said they had knowledge of the defendant.

(gg) Petitioner was denied the effective assistance of counsel when the prosecutor instructed the witnesses to have a closer look at the petitioner and walk up to the petitioner to see if they could better identify her and counsel failed to object adequately.

(hh) Petitioner was denied the effective assistance of counsel when the police and the prosecutor repeatedly and inappropriately commented to the jury that the petitioner's failure to explain what she was doing or where she was going implied her guilt.

(ii) Petitioner was denied the effective assistance of counsel when the prosecutor and the police repeatedly stated that because the petitioner consulted with her lawyer prior to arrest, that this was evidence of her guilt, and counsel did not object.

(jj) Petitioner was denied the effective assistance of counsel when the judge failed to give a jury instruction on another manner of death for the victim such as self-infliction, self-defense, or accident, and counsel failed to raise this issue.

(kk) Petitioner was denied the effective assistance of counsel when the judge deviated from the sentencing guidelines because the petitioner showed "no remorse" and counsel did not object.

(ll) Petitioner was denied the effective assistance of counsel when counsel failed to object to the triple hearsay that petitioner was in Virginia and at the scene of death.

(mm) Petitioner was denied the effective assistance of counsel when the jury was wrongfully instructed that the petitioner would be eligible for parole at age 60 and the parole board routinely denies geriatric parole for murder convictions. It is obvious the jury wanted the petitioner to serve 15 years and counsel did not object.

(nn) Petitioner was denied the effective assistance of counsel when the jury instruction concerning the use of a firearm in commission of murder caused the jury to think a felony was committed and counsel did not object.

(oo) Petitioner was denied the effective assistance of counsel when counsel did not object to the mandatory punishment for using a firearm in commission of murder as unconstitutional since it abrogates judicial discretion.

(pp) Petitioner was denied the effective assistance of counsel when the "flight" jury instruction unconstitutionally relieved the state of a burden of proof.

(qq) Petitioner was denied the effective assistance of counsel when counsel failed to proffer or subpoena other evidence or witnesses which would have put the petitioner in Texas.

(rr) The prosecutor had extensive work records for the petitioner on a laptop and this information was withheld from the petitioner in violation of Brady v. Maryland.

(ss) Each and every incidence of ineffective assistance of counsel, individually and aggregately, resulted in prejudice such that a different result by the jury would have been reached had the errors not been made.

See Cir. Ct. Order, June 10, 2009, 2-8, ECF No. 22-16. The court dismissed the petition on June 10, 2009. Rountree v. Johnson, Case No. CL09-669. Rountree appealed to the Supreme Court of Virginia, which refused the appeal on February 17, 2010. Rountree v. Johnson, R. No.

091874 (Va. Feb. 17, 2010). On February 25, 2010, Rountree filed the instant federal habeas

petition,[2] raising the following claims[3]:

1. Some of the trial court's rulings are not barred as a basis for state habeas relief, including: (a) the admissibility of identifications under Neil v. Biggers, (b) the admissibility of out-of-court identifications, (c) the effect of Satcher v. Commonwealth, (d) the refusal to give the second degree murder instruction, (e) the refusal to give the instruction of presumption of second degree murder, (f) the refusal to give the instruction as to other criminal agent, (g) the admissibility of the testimony of reporter Paige Akin.[4]

---

[2] For purposes of calculating the statute of limitations, a petition is deemed filed when the prisoner delivers his pleading to prison officials. Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); see also Houston v. Lack, 487 U.S. 266 (1988). In her petition, Rountree states that she placed the petition in the prison mailing system on February 25, 2010. The petition was received on March 1, 2010.

[3] In her federal habeas petition, Rountree couches many of her claims as state court error. For example, claim 2 is phrased as "[t]he State court erred in ruling that defense counsel had sufficiently objected to the presence and testimony of an agent of the Commonwealth, Paige Aiken." See Pet. 13, ECF No. 2. These claims have been construed as claims of the underlying error.

Additionally, Rountree has attempted to expand some of her claims in her federal habeas petition in order to cure deficiencies the Circuit Court of Henrico County highlighted in her state habeas petition. For example, in claim 18, Rountree argues that counsel was ineffective for failing to call CVS clerk Sharon Earnest to testify and explains the testimony Earnest would have provided. However, in her state habeas petition, Rountree failed to proffer any statement from the suggested witness. See Cir. Ct. Order, June 10, 2009, at 29, ECF No. 22-16. Additionally, claims 5, 7, 8, 17, and 19 in the federal petition allege trial court error as well as ineffective assistance of counsel, but were only exhausted before the Supreme Court of Virginia as claims of ineffective assistance of counsel. Any new or expanded claims that Rountree now attempts to make are barred from federal review because she did not present them to the Supreme Court of Virginia in her direct appeal or her state habeas petition, and the claims are now incapable of exhaustion because they are barred by the prohibition against successive state habeas petitions. See Va. Code § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition."). Therefore, the claims in the instant petition have been construed in petitioner's favor to raise only the arguments that have been properly exhausted.

[4] On the face of her federal petition, Rountree states only that the state habeas court "erred in ruling that erroneous state court rulings which deprived Petitioner of fundamental Constitutional Rights were barred as a basis for habeas relief." See Pet. 13, ECF No. 2. However, in her argument to support this claim, Rountree references "those grounds for relief set forth in her

2.    Defense counsel did not sufficiently object to reporter Paige Akin's presence and testimony at trial given that Akin had written false and inflammatory articles about the case.

3.    The burden of proof was improperly shifted at trial due to media attention and even if the jury was properly instructed as to the burden of proof, the Commonwealth's questioning of witnesses and closing argument shifted the burden and confused the jury.

4.    The Commonwealth was not held to its obligation to prove each element of the crime beyond a reasonable doubt, because the jury was never told the elements of the crimes and because the jury was not told they could not "boot-strap" the evidence to fill in gaps.

5.    Defense counsel was ineffective for allowing both charges to be tried together without requiring all of the elements of each crime to be proven beyond a reasonable doubt.

6.    It was error not to instruct the jury that evidence for specific elements of the crimes could not be inferred or presumed.

7.    Defense counsel was ineffective by allowing the Commonwealth not to offer direct evidence on the key elements of each offense and on the identification of the perpetrator. The circumstantial evidence that was offered was insufficient to support the convictions. For example, "the jury *needed* to have been instructed that they were *not* to conclude that a crime had been committed when the deceased died from a gunshot wound."

8.    Defense counsel was ineffective by allowing the court to use jury instruction #11, which told the jurors that they could presume petitioner was at the scene of the crime and relieved the Commonwealth of its burden to prove petitioner's presence at the scene.

9.    Defense counsel's filing of a "no alibi" statement and failure to call alibi witnesses Chris R. Gideon, Jr. and Tommy L. Lecroy when petitioner had an alibi violated petitioner's constitutional rights and ruined petitioner's credibility.

---

Original State Habeas...1A, 1B, 1C, 1D, 1E, 1F, 1G...raised in direct appeal."  See id. Therefore, claims (a)-(g) from her state habeas petition have been incorporated into claim 1 here.

10. Defense counsel's failure to present facts about petitioner's religious and vocational dedication was an unreasonable defense strategy.

11. Defense counsel's failure to present direct evidence of petitioner's efforts to ensure a continuing relationship between her children and their father (the victim) was an unreasonable defense strategy. Counsel should have called Bill Rountree, Jean Rountree, Cindy Rountree, and Annie Williams to testify.

12. Defense counsel was ineffective for encouraging petitioner to testify when he failed to make an effort to refute the Commonwealth's allegation that petitioner's vehicle was parked in the Houston Hobby Airport garage.

13. Defense counsel was ineffective when he allowed the Commonwealth to introduce evidence about an insurance policy.

14. Defense counsel was ineffective by failing to affirmatively rebut the Commonwealth's suggestion that petitioner had a financial motive to commit the crimes, and failed to negate all allegations of motive with evidence of petitioner's financial stability.

15. Defense counsel was ineffective for conceding that petitioner was in arrears for child support when in fact she was current on all existing child support orders. Defense counsel should have demonstrated that the child support payments had been restructured to allow petitioner to pay according to her abilities, and that petitioner was in compliance with that order.

16. The state court erred in holding that the Commonwealth had no duty to turn over exculpatory information from petitioner's confiscated laptop, including financial data that would have refuted the Commonwealth's claim that petitioner had a financial motive to commit the crime. Chris Gideon, Sr. could have testified that he notified the Commonwealth that the police had this information.

17. Defense counsel was ineffective for failing to get the Commonwealth to provide DNA analysis of evidence that was highly relevant and would have been exculpatory. Officer McDaniel would testify that the DNA evidence was collected before the van was re-rented.

18. Defense counsel was ineffective when he failed to call CVS clerk Sharon Earnest to testify, who would have stated that the woman who used Jerry Walters's debit card was not Piper Rountree.

19. The trial court erred in finding there was no prosecutorial misconduct, which included improper leaking of information and improperly suggesting which witnesses were credible.

20. Defense counsel was ineffective by failing to object to evidence suggesting that petitioner had a blonde wig at the time in question.

21. Defense counsel was ineffective for failing to appeal the denial of the motion to transfer venue because media attention made it impossible to impanel an impartial jury in Henrico County.

22. Defense counsel was ineffective when he failed to adequately object when the trial court allowed the Commonwealth to indicate who the defendant was when a witness was trying to make an identification and allowed a witness to leave the stand to try to identify petitioner.

23. Defense counsel was ineffective by failing to object to testimony from Officer Kelly suggesting that petitioner was guilty because she consulted with a criminal defense attorney, and for failing to object to the Commonwealth's closing argument about the same point because the burden of proof was thereby improperly shifted.

24. There was insufficient evidence for the jury to conclude that murder was committed. The evidence did not foreclose the possibility of accident or self-defense.

25. The trial court erred by deviating from the Sentencing Guidelines because petitioner maintained her innocence because such deviation was the equivalent of finding petitioner guilty of perjury and sentencing her for that crime.

26. Defense counsel was ineffective for failing to object to "triple hearsay."

27. The trial court erred in failing to properly instruct the jury as to the nature of the potential sentences, including the nature of a life sentence in Virginia.

28. The state habeas court erred by summarily dismissing petitioner's state habeas petition when defense counsel was ineffective for

failing to object to the jury instruction allowing the jury to conclude that a felony was committed if a weapon was used.

29. The state habeas court erred by summarily dismissing petitioner's state habeas petition when defense counsel was ineffective for failing to object to the mandatory three year sentence for use of a firearm in the commission of a felony, which is unconstitutional because it removes judicial discretion from sentencing.

30. Defense counsel was ineffective for failing to investigate and call additional witnesses, some of whom would have placed petitioner in Houston at the time of the offense. Those witnesses included Tommie L. Lecroy, Chris Gideon, Sr., Chris R. Gideon, Jr, and Alex McVey. Trial counsel also should have subpoenaed both petitioner's and the victim's home phone records.

31. The state habeas court erred in holding that petitioner's trial was not fundamentally unfair despite the combined effect of numerous errors.

32. The trial court erred in holding that the Commonwealth did not have to disclose the name or testimony of a witness who would have testified that the DNA and prints found in the van did not belong to petitioner.

33. The state habeas court erred by summarily dismissing petitioner's state habeas petition without considering additional information included in petitioner's response.

Based on the pleadings and record before this Court, it is uncontested that petitioner exhausted all of her claims as required under 28 U.S.C. § 2254. Accordingly, this matter is now ripe for review on the merits.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a

state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." McLee v. Angelone, 967 F. Supp. 152, 156 (E.D. Va. 1997) appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table). Moreover, in evaluating whether a state court's determination of the facts is unreasonable, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

### III. Analysis

Rountree's claims fall into four categories: (A) claims raised on direct appeal concerning admissibility of identification testimony, refused jury instructions, and testimony by a news reporter, (B) claims of insufficiency of the evidence, (C) claims of ineffective assistance of counsel, (D) claims of prosecutorial misconduct, and (E) claims of state court error.

A. <u>Identification Testimony, Refused Jury Instructions, and Testimony by a News Reporter</u>

In claim 1, Rountree argues that her constitutional rights were violated when the trial court denied the motion to suppress out-of-court and in-court identification testimony, refused to give jury instructions for second degree murder and the presumption of second degree murder in Virginia, and allowed news reporter Paige Akin to testify as a rebuttal witness for the Commonwealth. Rountree has failed to demonstrate that the state court's adjudications as to these issues were contrary to, or an unreasonable application of, clearly established federal law, or were based on an unreasonable determination of the facts. <u>See</u> 28 U.S.C. § 2254(d).

1. <u>Identification Testimony</u>

Rountree argues that the trial court erred by denying the motion to suppress the out-of-court and in-court identification testimony of Kathleen Molley (Southwest Airlines ticket agent), Alan Benestante (screener at Hobby Airport in Houston, Texas), Boyd Adams (employee of the 59 Gun Range), Tina Landrum (employee of Miller Mar convenience store in Williamsburg, Virginia), Tarra Watford (employee at Eagle Auto Sales near Norfolk Airport), Ray Seward (owner of Eagle Auto Sales), and Tamiko James (employee of Homestead Guest Suites Hotel in Richmond, Virginia) when the out-of-court identifications were based on a single photograph display. <u>See</u> Pet. 24, ECF No. 2 (referencing state court habeas petition). The Court of Appeals of Virginia rejected this claim on the merits, <u>see</u> Ct. of App. Op., July 24, 2007, ECF No. 22-3, and the Court of Appeals' reasoning is imputed to the Supreme Court of Virginia, which refused

further appeal without explanation. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); see also Va. Sup. Ct., Feb. 28, 2008, ECF No. 22-6.

To determine whether the admission of identification testimony violated a defendant's due process rights, courts consider the totality of the circumstances and evaluate whether there was a very substantial likelihood of misidentification. See Neil v. Biggers, 409 U.S. 188, 199 (1972) ("While the phrase ['very substantial likelihood of misidentification'] was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification…it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself."). To evaluate the likelihood of misidentification, courts should consider the following factors: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199-200. Notably, an identification may be sufficiently reliable to be admissible even if the confrontation procedure was suggestive. Id.

Here, the Court of Appeals' decision was clearly not "contrary to" established federal law because the court explicitly relied on Neil to evaluate Rountree's claim. See Williams, 529 U.S. at 413. Rountree also argues that the Court of Appeals erred in relying on Satcher v. Commonwealth, 421 S.E.2d 821 (Va. 1992), when deciding whether the identification testimony was admissible. See Pet. 24, ECF No. 2 (referencing state court habeas petition). However, in Satcher, the Virginia Supreme Court explicitly relied on Neil to evaluate the admissibility of in-court identification testimony. In Rountree's case, the Court of Appeals referenced Satcher to

support its conclusion that difference between some of the witnesses' descriptions of the woman they encountered and Rountree's actual appearance went to the weight to be given to the testimony rather than its admissibility. This conclusion was not contrary to clearly established federal law.

Rountree has also failed to show that the Court of Appeals' decision was an "unreasonable application" of federal law because the court reasonably applied the principle from Neil to the facts of Rountree's case. Id. The Court of Appeals evaluated the reliability of each of the out-of-court identifications using the factors from Neil and concluded that they were "not so unreliable that there was a substantial likelihood of misidentification." See Ct. of App. Op., July 24, 2007, at 6, ECF No. 22-3. The court reasoned that the circumstances surrounding the identifications were neutral and specifically articulated facts relating to each witness's interactions with Rountree that supported each individual conclusion that the identification was sufficiently reliable. Rountree has not provided clear and convincing evidence to rebut the presumption that the court's factual findings as to the circumstances surrounding each witness's interactions with Rountree were sound. See Miller-El, 545 U.S. at 240. Therefore, this claim will be dismissed.

2. Second Degree Murder

Rountree next argues that her rights were violated when the trial court refused to give jury instructions for second degree murder and for the presumption of second degree murder in Virginia. See Pet. 24, ECF No. 2 (referencing state court habeas petition). The Court of Appeals of Virginia rejected these claims on the merits, see Ct of App. Op., Aug. 16, 2006, at 7-9, ECF

No. 22-2, and the Court of Appeals' reasoning is imputed to the Supreme Court of Virginia, which refused the appeal without explanation. See Va. Sup. Ct., Feb. 28, 2008, ECF No. 22-6; see also Ylst, 501 U.S. at 803. Specifically, the Court of Appeals noted that the Supreme Court of Virginia has "long recognized that evidence showing a murder to have been deliberate, premeditated and wilful could be so clear and uncontroverted that a trial court could properly refuse to instruct on the lesser included offenses" and that evidence asserted in support of that instruction "must amount to more than a scintilla." See Ct of App. Op., Aug. 16, 2006, at 8, ECF No. 22-2 (citing Buchanan v. Commonwealth, 384 S.E.2d 757, 769 (Va, 1989)). The court further found that there was "not more than a scintilla of evidence to support a second degree murder instruction." Id.

It is well established that the scope of federal habeas review is limited to questions of either the federal Constitution or laws, and it does not extend to reexamination of a state court's interpretation and application of a state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998). Because Rountree's claim rests solely on an alleged misapplication of Virginia law,[5] which was rejected by the Supreme Court of Virginia, this claim will be dismissed.

---

[5] At trial, Rountree's attorney specifically stated that the argument relied on "the presumption [of second degree murder]…and case law…in the Commonwealth." See Cir. Ct. Tr., Feb. 26, 2005, at 1436. Any federal constitutional claim Rountree now intends to make relating to absence of the second degree murder instructions is barred from federal review because she did not present such a claim to the Supreme Court of Virginia in her direct appeal or her state habeas petition, and any such claim is now incapable of exhaustion because it is barred by the prohibition against successive state habeas petitions. See Va. Code § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition."). Nevertheless, it is worth noting that due process only requires an instruction on a lesser included offense when the evidence warrants such an instruction. See Winston v. Kelly, 592 F.3d 535, 545 (4th Cir. 2010).

### 3. Paige Akin's Testimony

Rountree argues that the trial court abused its discretion when it allowed the Commonwealth to use news reporter Paige Akin as a rebuttal witness. See Pet. 24, ECF No. 2 (referencing state court habeas petition). The Court of Appeals of Virginia rejected this claim on the merits. See Ct of App. Op., Aug. 16, 2006, ECF No. 22-2. Specifically, the court held that the trial court did not abuse its discretion by admitting Akin's testimony when neither party knew Akin's testimony would be needed until after McVey had testified. Id. at 11 (citing Wolfe v. Commonwealth, 576 S.E.2d 213, 215 (1990)). The Court of Appeals' reasoning is imputed to the Supreme Court of Virginia, which refused the appeal without explanation. See Va. Sup. Ct., Feb. 28, 2008, ECF No. 22-6; see also Ylst, 501 U.S. at 803.

As explained above, the scope of federal habeas review is limited to questions of either the federal Constitution or laws, and it does not extend to reexamination of a state court's interpretation and application of a state law. See Estelle, 502 U.S. at 67-68. Rountree's claim rests solely on the alleged misapplication of Virginia law for excluding witnesses from the courtroom, and her argument was rejected by the Supreme Court of Virginia. Thus, this claim will be dismissed.


### B. Insufficiency of the Evidence

In claims 3, 4, 6, and 24, Rountree argues that the evidence at trial was insufficient to support her convictions. Specifically, Rountree argues that the Commonwealth was not held to its obligation to prove each element of the crime beyond a reasonable doubt and insists that her rights were violated when she was convicted using only circumstantial evidence. See Response

24

11, ECF No. 21 ("THIS IS *NOT* THE SAME AS IDENTIFYING THE PETITIONER AS THE PERPETRATOR, which IS the REQUIRED standard for carrying the burden of proof on this issue.").

The circuit court concluded that Rountree's allegations in claims 3 and 4 had "no basis in fact" because the jury instructions explicitly stated "[t]he presumption of innocence remains with [Rountree] throughout the trial and is enough to require you to find her not guilty unless and until the Commonwealth proves each and every element of the offense beyond a reasonable doubt." See Cir. Ct. Order, June 10, 2009, at 19-20, ECF No. 22-16. After noting that jury instructions #6 and #14 explicitly stated that the elements for each crime must be proved beyond a reasonable doubt, the circuit court concluded that claim 6 was without merit. See Cir. Ct. Order, June 10, 2009, at 21, ECF No. 22-16. These conclusions were clearly not contrary to, or an unreasonable application of, federal law. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) (noting that the standard for analyzing a claim of insufficiency of the evidence for purposes of a federal due process analysis is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). Therefore, claims 3, 4, and 6 will be dismissed.

In claim 24, Rountree asserts that her rights were violated when she was convicted using only circumstantial evidence. The circuit court correctly concluded that this claim has no basis in law because circumstantial evidence is entitled to just as much weight as direct evidence. See Cir. Ct. Order, June 10, 2009, at 22, ECF No. 22-16 (citing Jeff v. Commonwealth, 510 S.E.2d 747, 748-49) (Va. 1999) ("[C]ircumstantial evidence may be more compelling and persuasive than direct evidence, and when convincing, it is entitled to as much weight as direct evidence.")).

25

This conclusion is clearly not contrary to, or an unreasonable application of, clearly established federal law. See Holland v. United States, 348 U.S. 121, 137-38 (1954) (recognizing that circumstantial evidence that convinces a jury beyond a reasonable doubt is sufficient to support a conviction). Therefore, claim 24 will be dismissed.

## C. Ineffective Assistance of Counsel

In claims 2, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 26, 28, 29, and 30, Rountree argues that her attorney provided ineffective assistance of counsel. The circuit court rejected these claims on the merits, and the circuit court's reasoning is imputed to the Supreme Court of Virginia, which refused the appeal without explanation. See Ylst, 501 U.S. at 803. Specifically, the circuit court dismissed the claims as failing to satisfy the standard for ineffective assistance of counsel articulated in Strickland v. Washington, 466 U.S. 668 (1984). See Cir. Ct. Order, June 10, 2009, ECF No. 22-16. In reviewing the state court's decision as to these claims, Rountree fails to show that the result was either contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts.

To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland, 466 U.S. at 687. To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the

26

wide range of reasonable professional assistance." Id. at 689; see also Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy.").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

To evaluate Rountree's claims of ineffective assistance of counsel, the circuit court explicitly relied on the two-prong test from Strickland. See Cir. Ct. Order, June 10, 2009, at 17, ECF No. 22-16. Rountree has therefore failed to show that its decisions on her ineffective assistance claims were "contrary to" clearly established federal law. See Williams, 529 U.S. at 413.

27

Furthermore, the circuit court reasonably applied the Strickland standard to the facts of Rountree's case in finding either counsel's performance was not deficient and/or that Rountree had failed to demonstrate that there was a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different for each individual claim. The circuit court held that claims 12, 17, and 20 failed to satisfy the performance prong of the Strickland standard. As to claim 12 (relating to Piper's testimony), the circuit court noted that Rountree's claim was "devoid of any facts establishing what questions were left unanswered," which meant that Rountree had failed to show that counsel's performance was deficient. See Cir. Ct. Order, June 10, 2009, at 26, ECF No. 22-16. The circuit court also noted that there was no evidence that the DNA evidence Rountree refers to in claim 17 belonged to the perpetrator, so there was no basis for challenging the lack of additional DNA analysis. See Cir. Ct. Order, June 10, 2009, at 28, ECF No. 22-16. In evaluating Rountree's argument in claim 20 (relating to evidence of a blonde wig), the circuit court noted that the evidence established that Rountree ordered a blonde and red wig and, therefore, "the record plainly establish[ed] that counsel's performance was not deficient" on this issue. See Cir. Ct. Order, June 10, 2009, at 30, ECF No. 22-16. These conclusions were based on reasonable applications of federal law.

The circuit court held that claims 9 and 10 failed the prejudice prong of the Strickland standard because Rountree had failed to demonstrate that that there was a reasonable probability that, but for these alleged errors, the result of the proceeding would have been different. The circuit court noted that claim 9—in which Rountree alleges that counsel erred by filing a "no alibi" statement—failed the prejudice prong because alibi witnesses were presented at trial, and because the circumstantial evidence "so plainly established her guilt" that any failure by counsel

in this regard was not prejudicial. See Cir. Ct. Order, June 10, 2009, at 23, ECF No. 22-16. As to claim 10, the circuit court noted that "Rountree does not proffer or demonstrate a reasonable probability of a different result at trial had counsel made this information known" and therefore dismissed the claim. See Cir. Ct. Order, June 10, 2009, at 24, ECF No. 22-16. These holdings were based on reasonable applications of federal law.

The circuit court cited Brockhart v. Janis, 384 U.S. 1, 8 (1966), Bassett v. Thompson, 915 F.2d 932, 940 (4th Cir. 1990), and Jones v. Barnes, 463 U.S. 745, 751-52 (1983), to support its holdings that claims 11, 18, and 21 related to strategic choices that fail the performance prong of the Strickland standard because they are not subject to second guessing in a petition for writ of habeas corpus. See Cir. Ct. Order, June 10, 2009, at 24, 29, 30, ECF No. 22-16. The circuit court also held that claims 5, 7, 8, 19, 26, 28, and 29 rested on arguments that counsel was ineffective for failing to make objections that had no basis in the law, which cannot satisfy the performance prong of the Strickland standard. See Cir. Ct. Order, June 10, 2009, at 20-22, 29-30, 35-37, ECF No. 22-16.

Finally, the circuit court held that claims 2, 13, 14, 15, 22, 23, and 30 failed to satisfy either prong of the Strickland standard. When evaluating claim 2, which related to testimony by news reporter Paige Akin, and claim 22, which related to witnesses leaving the stand to get closer to petitioner, the circuit court noted that counsel had objected to both issues and that the objections were overruled. See Cir. Ct. Order, June 10, 2009, at 17-18, 33, ECF No. 22-16. The circuit court concluded that claim 13 failed both prongs of the Strickland test because the insurance policy was admissible, and Rountree's attorney presented evidence to demonstrate that Rountree had no knowledge of the insurance policy. See Cir. Ct. Order, June 10, 2009, at 26,

ECF No. 22-16. In claims 14 and 15, Rountree argues that her attorney should have demonstrated that she was not in arrears on child support payments and should have refuted the Commonwealth's theory that she had a financial motive to commit the crime. The circuit court held that these claims failed both prongs of the Strickland standard because, even if Rountree was current on her child support payments, counsel's omission of this evidence was not deficient performance and "such marginal evidence would not have affected the outcome of the trial." See Cir. Ct. Order, June 10, 2009, at 27-28, ECF No. 22-16. Claim 23 also failed both prongs of the Strickland standard because counsel's response to the prosecutor's "highlight[ing] Rountree's failure at every turn to contradict the crushing, overwhelming circumstantial evidence that showed a methodical and premeditated plan to leave Texas, kill her former husband in Virginia, and then return" was not deficient, nor would the result of the proceeding been any different if he had taken a different approach given the "overwhelming proof of Rountree's guilt." See Cir. Ct. Order, June 10, 2009, at 24, ECF No. 22-16. Finally, the circuit court held that claim 30 could not satisfy the Strickland standard because Rountree argued that counsel was ineffective for failing to offer other evidence or witnesses at trial, but she did not proffer any statement from the suggested witnesses. The circuit court therefore dismissed the claim. See Cir. Ct. Order, June 10, 2009, at 37, ECF No. 22-16. Rountree has failed to demonstrate that the decisions by the circuit court were an unreasonable application of clearly established federal law. See Williams, 529 U.S. at 413.

Finally, Rountree has not provided clear and convincing evidence to rebut the presumption that the circuit court's factual findings were sound. Therefore, she has also failed to demonstrate that the circuit court's relevant decisions were based on an unreasonable

determination of the facts. See Miller-El, 545 U.S. at 240. Accordingly, claims 2, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 26, 28, 29, and 30 will be dismissed.


## D. Prosecutorial Misconduct

In claims 16 and 32, Rountree argues that her federal rights were violated at trial due to various forms of prosecutorial misconduct. The circuit court correctly noted that claim 16 fails because it relates to information from petitioner's laptop, which is not covered by Brady because that evidence was already known to the defense. See Cir. Ct. Order, June 10, 2009, at 28, ECF No. 22-16. The circuit court also noted that there was no evidence that the DNA evidence Rountree refers to in claim 32 belonged to the perpetrator, so that there was no basis for challenging the lack of additional DNA analysis. See Cir. Ct. Order, June 10, 2009, at 28, ECF No. 22-16. These conclusions were not contrary to, or an unreasonable application of, federal law. Cf. United States v. Bagley, 473 U.S. 667, 678 (1985) (recognizing that Brady violations concern only the prosecutor's failure to disclose material evidence not known to the defense). Therefore, claims 16 and 32 will be dismissed.


## E. Court Error

In claims 6, 25, 27, 31, and 33, Rountree argues that her federal rights were violated at trial due to various forms of state court error. Claims 6 and 27 concern alleged trial court errors relating to jury instructions, and they were rejected by the circuit court when it reviewed Rountree's state habeas petition. Claim 25 concerns the trial court's deviation from the

sentencing guidelines. Claims 31 and 33 concern the failure of the state habeas court to adequately consider Rountree's claims.

Claim 6 will be dismissed because the circuit court correctly observed that the record belies Rountree's claim. See Cir. Ct. Order, June 10, 2009, at 21, ECF No. 22-16. Claim 27 will be dismissed because, as noted by the circuit, it has no basis in law. See Cir. Ct. Order, June 10, 2009, at 36, ECF No. 22-16. The circuit court's conclusions on these issues were not contrary to, or an unreasonable application of, federal law.

Claim 31 will be dismissed because Rountree's rights have not been violated by any of the individual errors that she alleged, and relief therefore cannot be premised on their cumulative effect. See Fisher v. Angelone, 163 F.3d 835, 853 (4th Cir. 1999) (noting that "it would be odd, to say the least, to conclude that those same actions, when considered collectively, deprived [a defendant] of a fair trial.").

Claims 25 and 33 will be dismissed because they fail to state a claim for federal relief. In claim 25, Rountree argues that her rights were violated when the trial court deviated from the sentencing guidelines, which is a claim based solely on Virginia state law. See Estelle, 502 U.S. at 67-68 (recognizing that the scope of federal habeas review is limited to questions of either the federal Constitution or laws, and it does not extend to reexamination of a state court's interpretation and application of a state law). In claim 33, Rountree argues that her rights were violated during the state habeas corpus proceedings. See Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998) ("[A] challenge to Virginia's state habeas corpus proceedings[] cannot provide a basis for federal habeas relief").

## IV. Conclusion

For the above stated reasons, this petition will be dismissed. An appropriate Order shall issue.

Entered this ___10th___ day of ___March___ 2011.

Alexandria, Virginia

_____ /s/

Liam O'Grady
United States District Judge